RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE   9 / 28 /12
         ᏮᏫᏬ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

AGNES MARIE MAYES,                    CIVIL ACTION
            Appellant                 1:11-cv-02233

VERSUS

MICHAEL J. ASTRUE, COMMISSIONER       JUDGE DEE D. DRELL
OF SOCIAL SECURITY,                   MAGISTRATE JUDGE JAMES D. KIRK
            Appellee

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Agnes Marie Mayes ("Mayes") was 45 years old when she filed an application for social security disability insurance benefits ("DIB") or a period of disability on March 3, 2010 (Tr. pp. 92, 102), alleging a disability onset date of May 3, 2009 due to back problems, hypertension, and depression (Tr. pp. 89, 117).[1] That application was denied by the Social Security Administration ("SSA")(Tr. pp. 44).

A de novo hearing was held before an Administrative Law Judge ("ALJ") on March 11, 2011, at which Mayes appeared with her attorney and a vocational expert (Tr. p. 21). The ALJ found that, although Mayes suffers from hypertension, back pain and depression, she has the residual functional capacity to perform sedentary work except for work which requires more than limited reading and writing, more than one or two step, simple instructions, dealing with the general public, and more than limited contact with coworkers (Tr. p. 13). The ALJ concluded that Mayes could do assembly work (golf ball trimmer, fishing reel assembler, stone

_____

[1] Mayes filed a previous application for benefits which was denied initially on November 18, 2009; Mays did not pursue that claim further (Tr. pp. 102-103).

setter, or atomizer assembler) and, therefore, was not under a disability as defined by the Social Security Act at any time through the date of her decision on March 25, 2011 (Tr. pp. 16-17). (Tr. p. 16).

Mayes requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Mayes next filed this appeal for judicial review of the Commissioner's final decision. Mayes raises the following grounds for relief on appeal (Doc. 13):

> 1. The November 8, 2009 agency examination by Daniel Lonowski, Ph.D. is missing from the administrative record, although the ALJ's decision relief on Lonowski's report. Therefore, meaningful judicial review is precluded and remand for production of a complete record is warranted.

> 2. The ALJ did not comply with 20 C.F.R. § 404.1527(d), and she improperly rejected restrictions assessed by Mayes' treating doctor without good cause.

The Commissioner filed a response to Mayes' appeal (Doc. 14), to which Mayes replied (Doc. 15). Mayes' appeal is now before the court for disposition.

<u>Eligibility for DIB</u>

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(I), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or

2

mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. 423 (d)(1)(A).  Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. 423(d)(2).

<u>Summary of Pertinent Facts</u>

At the time of her March 2011 administrative hearing, Mayes was 46 years old, 5'2" tall, weighed 206 pounds, had a fifth grade education, and had past relevant work experience as a prison correctional officer (2003-2009) (Tr. pp. 24, 109, 121).

1. Medical Records

In July 2008, Mayes was examined at the Bunkie General Hospital for low back pain; she reported pulling a muscle while painting (Tr. pp. 176, 223).  In September 2008, Mayes was examined by Mary Hood, a board-certified family nurse practitioner, for a headache, depression, anger, bilateral shoulder pain, low back pain, and elevated blood pressure (Tr. p. 175).  Hood found bilateral shoulder pain and low back pain, as well as Mayes' chronic depression (controlled with Cymbalta) and hypertension (Tr. pp. 173-174, 219).  Hood weighed 214 pounds and her blood pressure was 140/90 (Tr. pp. 173, 219).  Mayes was prescribed Exforge, Bystolic, Cymbalta, Plavix, Fesol, and Risperdal,[2] and counseled

---

[2] Risperdal is an antipsychotic medication.  MEDLINEplus Health Information, Drug Information: Risperidal, *available at* http://www.nlm.nih.gov/medlineplus/druginfo/medmaster (a service of the U.S. National Library of Medicine and the National Institutes of Health).

3

about weight reduction (Tr. pp. 174, 220).

Mayes went to the emergency room in early May 2009 for sharp, throbbing, moderate to severe back pain radiating down both legs; Mayes was 5'2" tall, weighed 199 pounds, and denied using alcohol, illegal drugs, or tobacco (Tr. pp. 159-160).  Mayes' lumbar area was tender, she walked bent over, and she had positive straight leg raising, but she ambulated without difficulty (Tr. pp. 160-161, 192).  An MRI of Mayes' lumbar spine showed a light, broad-base disc protrusion at L4-5 that was probably clinically insignificant (Tr. p. 197).  Mayes was diagnosed with sciatica and prescribed Lortab and Soma (Tr. p. 162).

Mayes returned to the emergency room on May 17, 2009 with complaints of constant throbbing, mild to moderate back pain, but did not stay; Mayes was 5'2" tall, weighed 209 pounds, and she reported that she suffers from hypertension and depression (Tr. pp. 155, 157, 187).  Mayes left before she was called for examination (Tr. pp. 188-189).  On May 21, 2009, Mayes told Nurse Hood that she had severe back pain radiating down her legs; Mayes weighed 217 pounds, her blood pressure was 156/108, and she reported that she was taking her blood pressure medications, but her pressure was up to due pain (Tr. pp. 213-214).

In February 2010, Mayes again went to the Bunkie General Hospital with complaints of headaches, hypertension (and not taking her medication), and depression; her blood pressure was 150/96 (Tr. pp. 199, 211).  Mayes was diagnosed with hypertension, low back pain, muscle spasms and depression, and prescribed Exforge,

4

Bystolic, Cymbalta, and Flexeril (Tr. p. 199).

In March 2010, Dr. Srivastava, an internist at Bunkie General Hospital, filled out an evaluation for Medicaid, stating that Mayes has uncontrolled hypertension, low back pain, muscle spasm, depression, anxiety, anemia, and bipolar disorder, is non-compliant with her medication due to cost, does not have insurance for lab work, cannot lift more than fifteen pounds, and cannot sit or stand for long periods of time (Tr. pp. 203-206).

In April 2010, Mayes (then 45 years old) was evaluated by Dr. Jason Hatfield (Tr. pp. 242-243).  Mayes reported that she has had hypertension since she was 19, but had only intermittently complied with her medication because she cannot always afford it (Tr. p. 242).  Dr. Hatfield found Mayes' hypertension was not controlled; her blood pressure was 162/94, she was 5'2" tall, and she weighed 214 pounds (Tr. pp. 242-243).  Mayes also reported dull, aching pain daily in her low back, exacerbated by increased activity and heavy lifting (Tr. p. 242).  Dr. Hatfield noted that Mayes denied having any knee, shoulder or neck pain, sensory loss or dysfunction, mood changes, nervousness, anxiety, difficulty concentrating, or difficulty sleeping (Tr. p. 243).  Dr. Hatfield found that Mayes ambulated without assistance and was not in acute distress, did not appear to be depressed or anxious, her memory was intact, she had good insight and cognitive function, she had good muscle tone, her strength was 5/5 bilaterally in all muscle groups, her reflexes were normal, she did not have any joint heat, swelling or tenderness, she had full range of motion in her back and hips

5

and negative straight leg raising, and x-rays of her lumbosacral spine were normal with preserved joint spaces (Tr. pp. 243-244). Dr. Hatfield diagnosed uncontrolled hypertension and depression, and stated that Mayes could sit, walk, and/or stand for a full workday, lift-carry objects without limitations, hold a conversation, respond appropriately to questions, and carry out and remember instructions (Tr. p. 244).

In May 2010, Mayes underwent a psychiatric evaluation (Tr. pp. 276-283). Mayes reported that her father had sexually molested and physically abused her in the past, and that her husband physically and verbally abuses her (Tr. pp. 279-283). Mayes also reported seeing and speaking with ghosts (Tr. p. 280; Tr. pp. 272, 274-275). Mayes was found to be agitated, depressed, illogical, psychotic, suffering from delusions and hallucinations, her thinking was illogical, her insight was nil, and her judgment was poor (Tr. pp. 275-277). The psychiatrist's diagnostic impression was: Axis I-rule out schizoaffective disorder and rule out chronic schizophrenia, and Axis V-GAF of 45 (Tr. p. 277).[3]   The

---

[3] The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. Axis I refers to clinical syndromes, Axis II to developmental disorders and personality disorders, Axis III to physical disorders and conditions, Axis IV to psychosocial stressors, and Axis V to the global (overall) assessment of functioning. Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-35 (4th ed. 2000) ("DSM-IV-TR").

The Global Assessment of Functioning, or GAF, score represents Axis V of the Multiaxial Assessment system. The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-30 (4th ed. 2000) ("DSM-IV-TR"). GAF is a standard measurement of an individual's overall functioning level. The GAF score is a

psychiatrist also noted that Mayes had a history of prior psychiatric treatment (Tr. p. 276).

During her mental health care treatment in 2010, Mayes reported seeing ghosts (Tr. p. 274). Mayes' treatment goal was to decrease her symptoms of psychosis and depression (Tr. pp. 272-273). Mayes reported auditory hallucinations again in February 2011 (Tr. p. 271)

In August 2010, Mayes went to Bunkie General Hospital for stress, anxiety, back pain, high blood pressure, and because she was out of medicine (Tr. pp. 266, 288). In November 2010, Mayes was treated for low back pain and shoulder pain (Tr. p. 301). An MRI showed a minimal broad-based protrusion at L4-5, for which physical therapy was prescribed, and Mayes' hypertension was noted to be controlled and 131/75 (Tr. p. 301).

In December 2010, Nurse Hood treated Mayes and found her blood pressure was 162/100 and she weighed 201 pounds; Mayes reported that she does not take her medicine every day due to drowsiness (Tr. p. 264).

In March 2011, Mayes again went to the emergency room for high blood pressure and headache (Tr. p. 298); Mayes was discharged with medication (Tr. p. 300). Also in March 2011, Mayes told her mental

---

subjective determination that represents the clinician's judgment of the individual's overall level of functioning with respect to psychological, social and occupational functioning, on a hypothetical continuum of mental health-illness. DSM-IV-TR at 32-34. The GAF scale goes from 0-100. A GAF of 41-50 means the client has serious symptoms OR serious impairment with social, occupational, or school functioning. DSM-IV-TR, at 34. Also, Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

health counselor that she had blood pressure medication but did not take it (Tr. p. 271).

In late May 2012, Mayes returned to the Bunkie General Hospital and was again evaluated by Nurse Hood for complaints of severe back pain radiating down both legs; Hood weighed 217 pounds (Tr. pp. 167-168).  Mayes' medications were continued and she was again counseled about weight reduction (Tr. p. 168).

2. March 2011 Administrative Hearing

At her March 11, 2011 administrative hearing, Mayes testified that she was 46 years old, 5'2" tall, and weighed 206 pounds (Tr. p. 24).  Mayes testified that she lives with her husband, has five children who are grown, and completed the fifth grade at age fifteen (Tr. pp. 25, 37).  Mayes does not recall how many grades she repeated in school (Tr. p. 37).  Mayes testified that she passed her driver's test because her sisters helped her study (Tr. p. 37).  Mayes testified that she does not have a GED or any vocational training, can read and write a little, has a driver's license but does not drive often, and used to work as a correctional officer at a prison (Tr. pp. 25-26).  Mayes testified that she cannot read a newspaper or a letter from the Social Security Administration; her daughters read her letters for her (Tr. pp. 37-38).  Mayes testified that one of her sisters also worked at the prison where she was employed, and filled out Mayes' job application for her (Tr. p. 38).  Mayes testified that she used to receive SSI sue to her mental health problems, until she started working (Tr. p. 33).

8

Mayes testified that her back "went out" when she was at work on May 3, 2009, which she listed as her disability onset date (Tr. p. 26).

Mayes testified that her husband has diabetes (Tr. p. 28). Mayes testified that her daughters take turns cleaning, cooking, and shopping for her and her husband (Tr. p. 28); her daughters also remind her to take her medication and keep her appointments, and drive her where she needs to go (Tr. p. 35). Mayes testified that she cannot lift or carry anything, and cannot lift a gallon of milk from the refrigerator (Tr. pp. 28-29). Mayes testified that she does not have any friends, and her daughters and grandchildren visit her (Tr. p. 29). Mayes testified that she does not have friends because she does not like being around other people and does not trust anybody (Tr. p. 34). Mayes also testified that she is always tired and does not have any hobbies (Tr. p. 34). Mayes testified that she does not go to church and does not do yard work, and she watches television or listens to the radio about thirty minutes, then goes to sleep; her medication "knocks her out" (Tr. p. 29). Mayes testified that she does not sleep well at night, so she was prescribed a sleep aid (Tr. p. 29). Mayes testified that she sleeps about three hours during th day and has trouble sleeping at night (Tr. p. 36). Mayes testified that, insofar as her depression, she has about four bad days per week, when she just sits and cries (Tr. p. 36). When her blood pressure is high, Mayes has bad headaches and is tired; that happens about three times a week (Tr. pp. 36-37).

9

Mayes testified that she sees the nurse practitioner at Bunkie Rural Health, but has to go the Huey P. Long Hospital when she runs out of medication (Tr. p. 29).   Mayes takes Bystolic and Exforge for her blood pressure, Risperdal and Cymbalta for depression, ferrous sulfate for anemia, and meloxicam for pain (Tr. p. 30). Mayes testified that she has seen ghosts and heard voices since she was about eight years old, so she sleeps with the lights on and has been taking Risperdal for about two years (Tr. pp. 30, 32).   Mayes testified that some of her medications make her dizzy and some give her a headache (Tr. p. 31); the Risperdal makes her sleepy, but she becomes more depressed if she does not take it (Tr. p. 39).

Mayes testified that she can walk for about twenty minutes (Tr. p. 31).  Mayes testified that she cannot bend, kneel or stoop to pick something up off of the floor (Tr. p. 31).   Mayes also testified that she does not get along with anyone, and she does not like to be cold, but does not mind heat (Tr. p. 32).   Mayes testified that she can concentrate on a task for about thirty minutes (Tr. p. 36).

The VE testified that Mayes' past relevant work as a correctional officer, DOT 372.667-018, is medium work with an SVP of 4[4] (Tr. pp. 39-40).  The VE testified that Mayes probably could

---

[4] SVP, or Specific Vocational Preparation, refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. See DICTIONARY OF OCCUPATIONAL TITLES ("DOT") app. C (rev. 4th ed.1991). Unskilled work usually requires less than thirty days training, which corresponds to an SVP of 1 or 2; semi-skilled work corresponds to an SVP of 3 or 4; and skilled work requires an SVP level of 5 or higher. SSR 00-4p, 2000 WL 1898704, at *3

not return to her past relevant work as a correctional officer and did not have any work skills (Tr. p. 40).

The ALJ posed a hypothetical involving the a claimant of Mayes' age, education and work experience, with the limitations of lifting no more than ten pounds occasionally, walking/standing up to two hours in an eight hour day, sitting up to six hours in an eight hour day, a very limited ability to read and write, must have simple one or two step instructions, cannot deal with the public, and can only have limited dealing with her co-workers (Tr. pp. 40-41). The VE testified that such a person could do unskilled assembly work (SOC 51-2099, 330,940 jobs in the national economy, 830 in Louisiana) such as golf ball trimmer (DOT 732.587-010, unskilled, sedentary), fishing reel assembler (DOT 732.684-062, unskilled, sedentary), hot stone setter (DOT 734.687-058, sedentary, unskilled), atomizer assembler (DOT 706.684-030, unskilled, sedentary).

The VE further testified that Mayes would not be able to maintain her employment if she had crying spells and needed to leave the work area other than on scheduled breaks (Tr. p. 42).

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Mayes (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent

(S.S.A. Dec. 4, 2000). See also generally 20 C.F.R. § 404.1568.

to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Mayes has not engaged in substantial gainful activity since May 3, 2009 (Tr. p. 12), and that she has severe impairments of hypertension, back pain, and depression, but does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 12).  The ALJ also found that Mayes is unable to perform her past relevant work as a correctional officer (Tr. p. 15).

At Step No. 5 of the sequential process, the ALJ further found that Mayes has the residual functional capacity to perform the full range of sedentary work except as reduced by her inability to do

12

more than limited reading and writing, tasks with more than one or two step simple instructions, deal with the general public, or have more than limited contact with co-workers (Tr. p. 13).  The ALJ found that Mayes is a younger individual with a marginal education and no transferable work skills (Tr. p. 15).  The ALJ concluded there are a significant number of jobs in the national economy which Mayes can perform in assembly work, such as golf ball trimmer, fishing reel assembler, stone setter, and atomizer assembler (Tr. pp. 15-16) and, therefore, Mayes was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on March 25, 2011 (Tr. pp. 16-17).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors.  McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance.  Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of

13

the record as a whole.  The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.  Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder.  Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court.  Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981).  Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).  The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125.  But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

Law and Analysis

Issue 1 - Evidence

First, Mayes contends the November 8, 2009 agency examination by Daniel Lonowski, Ph.D. is missing from the administrative record, although the ALJ relied on Lonowski's report in her decision.  Therefore, meaningful judicial review is precluded and remand for production of a complete record is warranted.

Mayes is correct.  The ALJ relies on the examination report by

Lonowski, but it is not included in the administrative record; apparently it was never in the administrative record because it is not listed in the index.  Therefore, the Appeals Council did not see it, either.

An applicant seeking judicial review of an adverse administrative decision denying benefits would be deprived of due process of law if the administrative agency were to wholly fail to produce a record for meaningful review.  However, when the administrative record is incomplete, the touchstone is whether the administrative record that does exist permits meaningful judicial review.  Brady v. Apfel, 41 F.Supp.2d 659 (E.D.Tex. 1999), citing Harrison v. PPG Industries, Inc., 446 U.S. 578, 594, 100 S.Ct. 1889 (1980) (reviewing court may remand if unable to exercise informed judicial review because of inadequate administrative record), and Torres v. Shalala, 48 F.3d 887 (5th Cir. 1995) (remand need not be ordered when evidence is missing but there is still ample evidence from which a determination may be made).

The Commissioner conceded the error and attached Lonowski's report to his brief (Doc. 14).  However, Mayes points out that Lonowski's report is dated November 8, 2009, and was ordered by Disability Determinations Services.  Therefore, the report was ordered before she filed her present claim for DIB on March 3, 2010.

Mayes testified at her hearing that she received SSI benefits before she worked as a correctional officer.  Moreover, the record shows that Mayes filed a previous application for benefits which

15

was denied initially on November 18, 2009, and Mayes did not pursue that claim further (Tr. pp. 102-103).

Dr. Lonowski's evaluation and report was obviously ordered by the Office of Disability Determinations Services in a previous social security proceeding for Mayes, and not in the current application proceedings.  The ALJ apparently used the evidence from a prior application/proceeding and referred to it in her decision-evidence that is not included in the administrative record before this court.  It also appears that, to determine whether Mayes meets Listing 12.04, the ALJ relied on a Mental Residual Functional Capacity Assessment that is not in the current administrative record (Tr. pp. 12-13).   This court cannot make a meaningful judicial review of the case without all of the evidence relied on by the ALJ.

Therefore, this case must be remanded to the Commissioner for correction and supplementation of the administrative record to include the evidence from prior proceedings, since the ALJ used that evidence to make her decision.

Issue 2 - Treating Physician

Mayes also contends the ALJ did not comply with 20 C.F.R. § 404.1527(d), when she improperly rejected restrictions assessed by Mayes' treating doctor without good cause.  Mayes is referring to Dr. Srivastava's[5] assessment, for Medicaid, that Mayes cannot lift more than fifteen pounds and cannot sit or stand for a long period

---

[5] Dr. Srivastava is an internist employed at Bunkie General Hospital.

16

of time (Tr. pp. 203-204).

The ALJ relied on the 2010 medical evaluation by Dr. Hatfield in concluding that Mayes has the residual functional capacity to do sedentary work (Tr. p. 15).

As stated above, the opinion of a treating physician usually deserves to be given greater weight than that of a non-treating or consulting physician. Carry, 750 F.2d at 484. However, the weight to be given a physician's statement is dependent upon the extent it is supported by specific clinical findings. Elzy v. Railroad Retirement Board, 782 F.2d 1223, 1225 (5th Cir. 1986); Jones v. Heckler, 702 F.2d 616, 621 (5th Cir. 1983). An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled. It must be supported by clinical or laboratory findings. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981).

In Myers v. Apfel, 238 F.3d 617, 621 (5th Cir. 2001), the Fifth Circuit stated it has long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability. However, the opinion of the treating physician is not conclusive and the ALJ must decide the claimant's status. Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. An ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment,

17

frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. Myers, 238 F.3d at 621, citing Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000).

While an exhaustive point-by-point discussion of the medical evidence is not required, a summary conclusion as to the severity of a claimant's impairments is beyond meaningful judicial review because the ALJ offers nothing to support her conclusions. Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007). By the explicit terms of 42 U.S.C. § 405(b)(1), the ALJ is required to discuss the evidence offered in support of the applicant's claim for disability, to explain why she found the applicant not to be disabled. Audler, 501 F.3d at 448.

In the case at bar, the ALJ mentioned only two medical records-the evaluations from the consulting psychologist, Lonowski, and the consulting physician, Dr. Hatfield.

Bunkie General Hospital and the Bunkie Rural Health Clinic are Mayes' primary physical health care providers, but the ALJ failed to mention their medical records or Dr. Srivastava's medical assessment for Medicaid. The ALJ also failed to mention Mayes' mental health treatment at the Avoyelles Mental health Center, including the treatment notes and the diagnoses and opinion of the psychiatrist, and did not discuss her finding that Mayes suffers from depression.[6]

---

[6] Although the ALJ considered whether Mayes' depression meets Listing 12.04, she did not discuss Mayes' mental health treatment records (Tr. pp. 12-13).

18

As discussed above, the opinion of a treating physician deserves to be given greater weight than that of a non-treating or consulting physician.  Carry, 750 F.2d at 484.  Apparently Lonowski, a psychologist, evaluated Mayes only once.  Since the Avoyelles Mental Health Center records are not mentioned in the ALJ's decision, and the ALJ clearly relied only on Lonowski's one-time evaluation, it is unclear whether the ALJ considered the Avoyelles Mental Health Center records.  Therefore, the ALJ erred in failing to explain why she ignored and/or rejected the records and assessment from Mayes' primary care providers, and instead relied on evaluations from physicians who saw Mayes only once.

The Commissioner argues that the medical records from Nurse Hood do not constitute acceptable medical sources because she is not a medical doctor.  However, the Social Security Administration has stated that the records from a nurse practitioner (or a licensed clinical social worker of social welfare agency personnel) qualify as evidence from "other sources," as defined in 20 C.F.R. §§ 404.1513(d), 416.913(d), and as such can be used to show the severity of the claimant's impairment and how it affects the claimant's ability to function.  Social Security Ruling 06-03P.  Therefore, the ALJ clearly erred in not considering the medical records from Nurse Hood and from the mental health care workers at the Avoyelles Mental Health Center.

Therefore, substantial evidence does not support the ALJ's/Commissioner's conclusion that Mayes is not disabled.  Since substantial evidence does not support the conclusions of the ALJ

and the Commissioner, their decision is incorrect as a matter of law.  However, this does not entitle Mayes to a decision in his favor based upon the existing record.  The record is simply inconclusive as to whether there are any jobs existing in sufficient numbers in the national economy which Mayes can perform, given her true impairments.

Therefore, Mayes' case should be remanded to the Commissioner for further proceedings.  On remand, the ALJ must consider the medical evidence from Bunkie General Hospital and the Bunkie Rural Health Center and explain the weight given to it in her decision. The ALJ must also consider Mayes' mental health treatment at the Avoyelles Mental Health Center and the psychiatric evaluation when re-evaluating Mayes' mental health and its effect on her ability to work.

Also, on remand, the ALJ should further develop the evidence as to Mayes' IQ, which is apparently low, and the evidence that she has some mental disorder/psychoses in addition to depression, and develop the evidence in those areas by ordering formal intellectual testing and a new psychological or psychiatric evaluation.[7]

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Mayes' appeal be GRANTED, the final decision of the Commissioner be VACATED, and the case REMANDED to the Commissioner for further

---

[7] It is noted that Lonowski recommended that Mayes' intellectual capabilities be formally tested due to her history of special education (Doc. 14).  The evidence that Mayes left the sixth grade at age 16 also indicates the need for formal intellectual testing.

correction and supplementation of the administrative record to include all material evidence from Mayes' prior proceedings (including that relied on by the ALJ/Commissioner in this proceeding).

IT IS FURTHER RECOMMENDED that the case be REMANDED for consideration of Mayes' residual functional capacity based on *all* of her medical records, including those from the Avoyelles Mental Health Unit, Bunkie General Hospital, and the Bunkie Rural Health Clinic. The ALJ shall also consider and further develop the evidence as to Mayes' IQ and her mental disorder/psychoses that is in addition to her depression.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN fourteen(14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

21

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____
day of September 2012.


                                        JAMES D. KIRK
                              UNITED STATES MAGISTRATE JUDGE


22